You may proceed. May it please the Court, my name is Melanie Penny Ochoa, and I represent Appellant Jane Doe. I will be addressing the matters related to the District Court order granting summary judgment, Jane Doe's Fourth and Fourteenth Amendment claims, as well as her claims for intentional and negligent infliction of emotional distress, as well as any questions related to the cases that the Court directed us to be prepared to address or our argument. My co-counsel, Mrs. Chan, will address the matters related to the Court's order granting partial summary judgment, Jane Doe's First Amendment and Bain Act claims. I'll reserve five minutes of our time for Mrs. Chan and save three for rebuttal. The law is clear on each of Jane Doe's claims. The District Court expended considerable effort in this case and thoroughly considered the record, but at the end of the day, the District Court simply got the law wrong. Binding precedent requires that this Court reverse the District Court's orders and permit Jane Doe to proceed on her claims under the Fourth and Fourteenth and First Amendments, the Bain Act, and her claims for negligent and intentional infliction of emotional distress. The District Court's ruling on Jane Doe's Fourth Amendment claim, for instance, is contrary to numerous decisions of this Court that authorize a strip search of arrestees charged with minor offenses only if jail officials have a reasonable suspicion that the individual arrestee is carrying or concealing contraband. The District Court erred in granting the defendant's motion for summary judgment solely based on Blick's assertion that she did not remember Jane Doe but presumes that any strip search would have been for Jane Doe's own safety. District Court never cited nor applied the relevant Fourth Amendment law and did not conclude that under the plaintiff's facts, or even the facts as alleged by the defendants for that matter, that the defendant's search was justified by specific articulable facts that Jane Doe was concealing contraband. To grant the summary judgment was an error. Jane Doe also established the elements of her deliberate indifference claim under clear Ninth Circuit law. Her facts established that she had a serious medical need which, if left untreated, could result in further significant injury or unnecessary infliction of pain, and that the defendants were deliberately indifferent because they knew of and disregarded an excessive risk to her health or safety. This Court's decision in Carnell also compelled a finding that the facts alleged by Jane Doe established a Fourteenth Amendment violation. The defendants were not entitled to summary judgment. In Carnell, this Court has already recognized that officers' conduct of taking a misdemeanor arrestee and rape victim to be booked rather than directly to the hospital could constitute a Fourteenth Amendment violation. The rules are also clear on summary judgment. The Court must accept as true the statements of the nonmoving party and draw reasonable inferences in its favor. The cases that the Court ordered us to address do not change this rule. In Scott v. Harris and the Ninth Circuit's interpretation of Scott and George v. Morris, both recognize the uncontroversial rule that where the plaintiff's version of the facts is blatantly contradicted by dispositive evidence in the record such that no jury could believe it, then the Court is not required to accept the plaintiff's version of the facts as true. And this is not the case here. The record is replete with evidence supporting Jane Doe. But what external evidence do you have of the strip search other than her own testimony? We also have the booking sheet filled out by Deputy Blick that states the color of her underwear. How could she have known this if she did not conduct a strip search? Well, a strip search is different than seeing what the color of somebody's underwear was. I mean, you're drawing an inference that that necessarily was a strip search because there's a reference to the color of her underwear. That doesn't mean she was strip searched. Your Honor, on summary judgment, inferences should be drawn in the plaintiff's favor. There's external evidence from which could be inferred that there was a strip search that occurred. Similarly in Edgerly, there was not evidence that the plaintiff had been completely removed of all of his clothing, merely that they pulled his clothing away and exposed his undergarments and also his privates. And that was what Jane Doe also alleged occurred here. The defendants similarly failed to establish that Jane Doe's intentional infliction of emotional distress claim failed as a matter of law. Jane Doe alleged sufficient facts that there was extreme and outrageous conduct by the defendant with the intent or reckless disregard of the probability of causing emotional distress, that her suffering was severe and extreme, and there was actual and proximate causation of distress. Well, let's back up a little bit. I want to make sure I understand your best case with respect to Scott v. Harris. First let me ask you, aside from how Doe arrived at Mason's house on the evening in question, are there, and you may have just said it, but I wanted to make sure I understand it, are there any allegations that the defendants do not dispute? With regard to how she arrived there specifically? Well, aside from how she arrived at Mason's house on the evening in question, are there any allegations that the defendants do not dispute? Yes, Your Honor. They don't dispute that she was intoxicated to the point where she could not care for herself, and they do not dispute that they asked Mason what had occurred, and he stated that they had sexual intercourse. That by itself establishes rape under California Penal Code. And so even the defendant's own testimony would aid a reasonable jury to conclude that she had been raped, in addition to Jane Doe's own testimony to that effect. They also stated that they recalled her saying, excuse my language, but he fucked me in the ass and now he's going to get away with it. And that, again, would assist a reasonable juror to conclude that one sexual intercourse occurred and that it was against her will and she had been raped. And so the inferences, even from the defendant's own evidence, further support Jane Doe's version of the facts. But she admits at other times that it was consensual. The only incident in the record where she states that it was consensual was in the course of the investigation that she attempted to get conducted onto the events that occurred that evening, and particularly the misconduct, both the misconduct of the defendant, the deputy defendants and Mason. And Jane Doe specifically stated in her testimony that the reason she did so was because she was afraid of further retaliation by the defendants and was concerned that they would try to cover up the fact that she had been raped. She also went back to that same investigating officer I think less than a month later to say that her counselor, her psychiatrist, had recommended that she tell the truth in this investigation. And so there's evidence. She sent text the next day to Mason, I believe, acknowledging or reflecting that it was consensual. I thought she told at least two other people that it was consensual. I'm just trying to figure out how really this is different from Scott v. Harrison, why it wouldn't be correct to say that those allegations are so discredited by the record that no reasonable jury would have believed them. First, Your Honor, the text message that she sent to Mason did not admit that sex was consensual, and she explicitly described or explained them saying she wanted to try to get him to admit that he had raped her. She had no evidence in the record that would prevent a jury, once hearing her explanation of the events that occurred, why she acted as a traumatized rape victim after she had been disbelieved by the police that she had been raped, the police that came to her, came to the house and saw the state that she was in with his ejaculate on her face, her so drunk that she could not care for herself, and him admitting that he had sex with her. That wasn't sufficient for them to believe that she had been raped, and she attempted to try to get him to admit as much. And that's her own testimony. She stated that in the record that was submitted by the defendants in support of their motion for summary judgment. Have you seen the original booking photo that supposedly supports her statement as to the status of her face? The booking photo that all I've seen is redacted. You see, this is the problem with excerpts. You get photographs from which you can tell nothing. Have you seen the original? I only am able to see what was before the district court. We were appointed as pro bono counsel, so I'm not privy to the entire record. Have you heard the 911 tape where she supposedly is yelling in the background that she has been raped? That's not in the record either? No, I have not, Your Honor. And nonetheless, there's no, again, Scott carved out a very, very specific exception to the longstanding and consistently applied rule that the facts and inferences must be drawn in favor of the plaintiff. Well, that's true, and I think that's the problem with this case. It's so replete with situations where she contradicts herself that it becomes difficult, as, for example, the Jeffrey case might have said, that it becomes difficult to believe that any jury could possibly believe this person. And, in fact, that if a jury were to come back in her favor, a judge would be compelled to grant a verdict in favor of the other side because it's simply not supported by the evidence. Your Honor, I disagree that Jeffreys or Rojas would find, would, under the Second Circuit opinions in Jeffreys or Rojas, that we would necessarily find that to be true because in both of those cases, the Court specifically considered the fact that there was no explanation as to why the plaintiff ostensibly had inconsistent statements. And if we rule, the issue of whether any jury could believe her, the way that it's being described here is simply an issue of credibility and weighing the evidence. There's her own testimony could be believed by a jury, especially a jury that is aware and understands what happens to a rape victim and how many rape victims both say inconsistent statements at various times or another, even recant completely. If this Court finds that, as a matter of law,  you're down to less than five minutes left of your time. Your co-counsel is anxiously awaiting, I think, her opportunity to argue. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Sonia Chan, pro bono counsel for Petitioner Appellant Jane Doe. As noted by my co-counsel, I will be addressing the issues relating to the Court's order granting in part defendant's motion to dismiss. First, I'm going to address whether Doe's statements to County Deputy Blick that she was raped by a police officer constitutes a grievance protected by the Petition Clause of the First Amendment. The First Amendment issue in this case is about Doe's right to be free from retaliation by the police officers for reporting a crime committed against her by another officer. I want to note at the start here that the County defendants have failed to provide any substantive arguments to counter Doe's legal arguments regarding this issue in its briefing to this Court. We feel here the retaliation claim in Doe's complaint is straightforward and clear. Jane Doe, an individual citizen, reported that she was sexually assaulted by a police officer to County Defendant Sheriff Deputy Suzanne Blick. In an attempt to silence her complaints of a sexual assault committed by another officer, they strip-searched Doe, mocked her, converged around her cell by putting on blue gloves, and threatened her with a cavity search unless she, quote, shut up and stop accusing a police officer of wrongdoing. This is a classic case of retaliation. The District Court erred as a matter of law in dismissing Doe's First Amendment claim because by holding that, that Doe's oral complaints are not afforded protection by the First Amendment Petition Clause because petitions are limited to formal mechanisms under the Third Circuit case of Forwaker v. Stravinch. What's your best case? We believe here that I would cite for two cases. Regarding the oral petitions, I believe that the Holzheimer v. City of Memphis from the Sixth Circuit is one of our best cases, which expressly states that Forwaker does not stand for the proposition that only grievances submitted through formal mechanisms are afforded First Amendment petition. True, but they were complaining about prison conditions, right? Holzheimer was actually, the plaintiff was complaining about government regulations that were not allowing his buggies to be parked in a certain area. Right. Right. And then in Pearson v. Wellborn, I think you're referring to, I believe it was the Seventh Circuit that was complaining about prison conditions. Well, I will direct you, Your Honor, to another case that was not cited in our brief, but You don't have any case that says that complaints to a police department constitute a petition within the meaning of the First Amendment? We do, Your Honor. In the Sixth Circuit case, Gable v. Lewis, the case, that case stated that any complaints submitted to police departments are protected within the Petition Clause. Any complaints? I'm sorry? Any complaints? Yes. You realize there's probably tens of thousands of these things a day that would fall into the category that you're describing? Yes, Your Honor. I understand that. I think that Gable Are all protected by the Petition Clause in the First Amendment? No, Your Honor. I was Jails. Constantly, people in jails complain about everything, 24 hours a day. And are you saying that those are protected by the Petition Clause of the First Amendment? Well, Your Honor, under Gable v. Lewis, they stated that petitions that are submitted to police departments Your answer is yes. We believe that these statements have to be in the nature of a formal grievance. So the courts have stated that any statements regarding private concerns versus public concerns are not applicable here. There is a case, Mazzeo v. Gibbons, which is a district court case with case facts very analogous to our case at hand. There, the district court denied the defendant's motion to dismiss against a sheriff where the plaintiff alleged that the sheriff retaliated against her for reporting an attempted rape by a congressperson. In our case here, Jane Doe is making a complaint in the nature of a criminal complaint to the police officer trying to report a sexual assault. We believe at least under Gable v. Lewis, which holds that complaints to police departments and maybe it did not necessarily discuss to what extent and what type of complaint, the type of complaint that Doe is making, which is essentially reporting a crime, is exactly the type of complaint that a normal person would make to the police. And we want to encourage and protect citizens for reporting wrongdoing and for them to have a remedy if they are retaliated against if they are being silenced in making these complaints to the police officers. Your time has expired. Are there further questions? Okay. Thank you. I think we're good. Thank you, Your Honor. And we'll give you a little time for rebuttal. Good morning. I may please the Court. David King for the City of San Mateo Defendants. Parties are directed by the Court to review four cases, three circuit court cases and one U.S. Supreme Court case, as to their possible relevance to this pending matter. Each of those cases stand for the same proposition with slight variations on the theme, that in certain cases, albeit rare cases, where the record as a whole so flatly contradicts the plaintiff's story or where the plaintiff's version of the facts is so internally inconsistent, unsupported, and lacking in credibility such that no reasonable jury could believe the plaintiff's story, the court need not adopt the plaintiff's version of the facts for purposes of ruling on a summary judgment motion and need not give plaintiff every inference. I suppose you'd like just Judge Sotomayor's statement in the Pico case. But is that the rule in the Ninth Circuit? I mean, what does the George case hold? Does not Judge O'Scallion say categorically you can't get into credibility issues in summary judgment? I believe that the Court in George did attempt to distinguish the Scott v. Harris case rather than say that the reasoning and the logic in Scott and the other cases that we referred to doesn't apply and can never apply on a appeal from a grant of motion for summary judgment. In an interlocutory – on an appeal from an interlocutory order, as was the case in So you think there's a distinction between cases that come to us on interlocutory in an interlocutory mode as compared to straight from a summary judgment mode? Actually, I think that there really isn't a significant difference in terms of the review. I think that the same principles that were espoused in the Scott case and the other one, the principles all apply equally here and, in fact, maybe with greater force. I think the burden on the defendant on an appeal from an interlocutory denial of a motion for summary judgment on qualified immunity, that's a tougher burden to overcome to have the Court reweigh facts. The Court is not supposed to reweigh facts in those circumstances. But in rare circumstances where the record as a whole demonstrates that the claim is so utterly lacking in credibility, the Court has the discretion to disregard the plaintiff's version of the facts. And – That's a pretty rare case, though, wouldn't you say? Sir? That's a pretty rare case. It is. And this is a very good example of such a case. In fact, in this case, I think that the evidence is even more compelling than what was before the Court in Scott and Rojas and Wilkinson and Jeffrey. If we look at the record as a whole, there is a serious question as to the existence of the first prong of the test for deliberate indifference, that is, the existence of a serious medical need that if left untreated would result in further harm. The first prong, serious medical need, in this case, is alleged to be rape. The plaintiff was a rape victim. The plaintiff in the lower court introduced no evidence at all other than her self-serving testimony to support her allegations. And just as in the Second Circuit cases of Rojas and Jeffrey, her own testimony and statements were filled with glaring inconsistencies and contradictions, casting more than mere doubt on the plausibility of her version of the facts. Are you arguing that rape is not a serious medical need requiring immediate treatment? No, Your Honor. I'm not. Although, I do believe that. I mean, I think you argued that in your brief. I don't think you argued these three cases. I think the Court asked you to look at these three cases. So I'm curious what you are arguing with respect to rape and not being a serious medical need. If you're saying you're not arguing that, what are you arguing? Well, first, what I'm arguing is that in this case, there is no corroborating evidence that there was, in fact, a rape. And, indeed, there are multiple instances where the plaintiff denied that there was a rape. In fact, she said that all the sex was consensual. And in question, she said that multiple times in the course of formal investigations, which she instituted with two different police departments, the San Jose Police Department, when she instituted an internal affairs investigation into Officer Mason, not claiming that she had been raped, but rather claiming that he had abused his position of power by calling 911 and having other officers come to the house and then have her arrested when she refused to leave. She did not claim that she was raped. In fact, she was specifically stated in that interview, which was recorded and which is uncontroverted, she said that all the sex that night was not only consensual, but planned in advance, that she had talked with Mason beforehand and agreed to do the things that they did that night. And point of time, when did she first tell anybody that this was a rape? The first time that she claimed that there was any nonconsensual activity was on March 16th, which was the third interview. It was with Lieutenant Daughtry of the San Mateo Police Department. He interviewed her the first time in February, and he specifically asked her whether there was anything she wanted to complain about other than the claim of false arrest. She claimed in that interview that she was not publicly intoxicated, she was not drunk, and therefore it was a false arrest. She said that all the sex was consensual. The first time that she claimed that there was some nonconsensual activity was on March 16th, the second interview with Lieutenant Daughtry, and she at that point said that some of the sex was consensual and some of it wasn't. The vaginal sex was consensual, and the anal intercourse was not. And when she told him to stop, he did. Right. There's some, there's a reference in the record to the 911 call. She claims, she claimed at some point in this whole process that if you listen to the 911 call, one will hear her yelling, I've been raped in the background. That's not in the record. The 911 tape, whatever it is, is not in the record. Does it exist, and have you heard it? It does exist. I have multiple copies of it. I have a transcription of it, and the claim is just, is absolutely false. Absolutely false. Well, why wasn't it part of the record? Well, there's some problems with laying a foundation for the tape. We were unable to locate the 911 operator. I have a transcription that we had prepared of the recording, and, I mean, honestly, when I was taking the plaintiff's deposition, I was really kind of at a loss as to how to lay a proper foundation for that tape, and so that it would be admissible evidence. Well, why don't I, I would imagine, I would imagine you might play it and ask her, is that your voice? Your Honor, I didn't, and I do regret it. I, if the Court would like us to augment the record, I would be happy, pleased to produce a copy of the transcription for the Court. It's hard for us to take evidence anew on appeal. It's a pretty rare circumstance. But that is kind of an interesting hole in the record. H-O-L-E in the record. Okay. To proceed. You're down to about seven minutes. You had an equal time allocation, so manage your time as you want, but. Well, I just wanted to point out that her story changed a third time when she claimed that none of the sex was consensual because she was too intoxicated to give consent. And this was, of course, well after her initial statement to the police officers. It's somewhat contradicted by the text messages, too, where she says, if you didn't want to have sex with me, you should have just told me. Right. There are so many contradictions in the record in what her story is that she has no credibility whatsoever in this case. And she also changed her story with respect having any, ever having sought medical treatment. She repeatedly admitted that she never sought medical attention after her six-hour detention. That persisted all the way through her deposition, which was four years after the incident. And then all of a sudden she said she did, but she wouldn't tell anybody what it was. Exactly, Your Honor. In facing summary judgment, she submitted a change to her deposition testimony claiming that, in fact, she had sought medical attention two days after her release, but refused to tell anybody who it was. And she didn't produce for the lower court a medical record, a medical report, or an expert physician to testify or submit a declaration at all that she actually was seen or that she had any harm which flowed from the six-hour delay. She produced no evidence to show that there was any harm that was occasioned by the delay in her ability to seek treatment, which she never got. It's a sham on her part to modify and change her deposition testimony. Yeah, but we have, we actually have a case on that point on Davis, Nelson v. City of Davis, where we said, look, we can rely on deposition testimony even if it's contradicted later, and the district court is not supposed to make credibility determinations. And it's a, if every time there was a credibility fight in the summary judgment case, we'd be, we'd be making a whole new law here in terms of determining who's right and who's wrong. So, I mean, I'm hearing your argument, but the more and more you talk about the differences in facts, then I'm saying, well, the district court did make a credibility determination. And that puts it into the rare case. Either it's a rare case or it's not. I believe, Your Honor, it is the rare case before the Court here where the plaintiff has, on multiple occasions, admitted that all of the sex was consensual, claimed that she wasn't intoxicated, and the rest was therefore false, and then long after the fact, changes her story dramatically, and at deposition says, well, I lied when I was talking to Sergeant Gowdy. I lied when I was talking to Lieutenant Daughtry about the sex. Why did she lie? She claims that she lied because she thought somehow that would lead to the truth. That's nonsensical, Your Honor. Good jury argument. It's a good jury argument. You better hear from your colleague. You've got only three minutes left. Thank you, Your Honor. May it please the Court. David Levy, appearing on behalf of the county defendants. If I could address the petition argument that was just raised a few moments ago. I agree with what Judge Trott was inferring, that the exception would swallow the rule. Every single case would involve a petition claim. Every single lawsuit, somebody is complaining about something, and every case would turn into a First Amendment case. This situation, excuse me, this situation does not rise to the level of a petition seeking redress. I might add that the morning after, in other words, the plaintiff was in custody for four to five hours, if she truly felt she needed to complain, she could have gone to a different police department, she could have gone to a doctor, she could have gone somewhere, but she did not. That is significant, obviously, because it suggests that she really didn't make a legitimate petition claim, but also it is completely consistent with all of the evidence in the case that she did not complain about being raped during the time she was in the jail. What case best supports your argument? I would say the Wilkinson case, the four cases the Court raises. On petition, on the petition issue. I don't have a case. I cannot answer that question, Your Honor. If you like, I'd be happy to. Have you looked? No, I haven't, because I just considered it to be so absurd. And I know that I don't mean disrespect to petition, excuse me, appellants, but by its definition, every single case, any time you are saying anything to a government employee, you're being arrested or being booked into the jail for being drunk in public, and anything you say is going to be deemed a petition protected by the First Amendment? I'm not aware of a case that says that. Well, there are a lot of cases, and they've cited them, that indicate that the form of the petition really doesn't matter. It can be an informal request. I mean, we're faced with a situation. It's sort of a novel argument here, but it doesn't mean it's – how do you distinguish Gable? How do you distinguish Gable? It is a more serious claim of a request for change, basically. And that is just – that's not what this case is. I know I may be answering tautologically, but... Okay. I think we have your argument in hand. Anything else? Well, I never really got a chance to address the rest. I would be happy to entertain any further questions, but I do believe that the four sites asked us to address are very, very important for dealing with the sham pleadings and testimony being changed at whim. And that is a situation we have here, and Judge Olson acknowledged it, and we would ask this Court to do so as well. Okay.  We'll give you two minutes for rebuttal. Thank you. Jane Doe deserves to have her day in front of a jury. Under the facts, as alleged by her, which this Court must credit, the defendants are liable for the harms they inflicted upon her when they prevented her from obtaining medical care after her rape, refused to take her to the hospital, taunted her, threatened her, a recent rape victim with the potential of a cavity search. This Court should not carve out an exception for rape victims as uniquely unprotected from retaliation and intimidation. As Judge Trott mentioned earlier, that this Court is not going to decide as a matter of law that a victim with inconsistent statements is per se unbelievable, cannot be believed by any jury. But it is this Court's duty to decide as a matter of law. It cannot weigh evidence or determine credibility. And even the district court did not attempt to do that. Under California Penal Code, the officer's own testimony would constitute probable cause that a rape had occurred when they encountered Jane Doe very intoxicated and an individual who just claimed that he had had sex with her. Judge Thomas, as Judge Thomas recognized, this is an issue for the jury. All of the defendant's arguments are claims that should be made for a jury to decide and determine who they believe and whether or not Jane Doe's version of the facts is believable. And to the question of when is the first time that she claimed that she was raped, it was the night of the rape to the arresting officers on November 5th. Any potential allegedly inconsistent statements occurred after that. And I would actually defer to co-counsel for the remaining... 30 seconds. Thank you, Your Honor. To address Apelli's arguments regarding exception swallowing the whole, we don't believe here that Doe's statements in reporting a rape to police officers that was committed against her by another police officer is creating an exception here. We think it was established under Gable v. Lewis that complaints made to police departments are protected and there are additional elements that would need to be met for any plaintiff to file a First Amendment claim. And here, if holding that defendant was not allowed, that plaintiff was not allowed to make a complaint to the police department and they were allowed to retaliate against her to silence her to cover up a crime by another police officer, then any plaintiff would have no remedy to bring a complaint to the police and they would be allowed to silence Doe's complaints in any other instance. Thank you, counsel. And thank you both for your pro bono representation. We appreciate it. The case is heard and will be submitted for decision.
judges: Trott, Thomas, Murguia